IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge R. Brooke Jackson

Civil Action No. 20-cv-01091-RBJ

TYRONE J. RICHARDSON,

      Applicant,

v.

DEAN WILLIAMS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, Tyrone J. Richardson, is a prisoner in the custody of the Colorado Department of Corrections. Mr. Richardson has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his conviction and sentence in Jefferson County District Court Case Number 15CR3469. Respondents filed an Answer (ECF No. 24). Mr. Richardson was given the opportunity to file a reply but did not do so within the time allowed.

After reviewing the record, including the Application, the Answer, and the state court record, the Court concludes that Mr. Richardson is not entitled to relief.

## I.    BACKGROUND

A jury convicted Applicant of attempted first-degree murder, second-degree assault, and thirty-one other counts relating to a botched armed robbery. The following description of the offenses is taken from the opinion of the Colorado Court of Appeals on direct appeal.

## I. Factual Background

### A. The Botched Robbery

¶ 3     Three masked men entered a bank, threatened the bank employees at gunpoint, and escaped with thousands of dollars. The men sped off in a vehicle. After the vehicle crashed, the trio fled on foot. They broke into a nearby home, assaulted and shot the homeowner, and stole his minivan.

¶ 4     A witness saw the men crash the minivan into a tree and run toward a nearby school parking lot. The men approached a woman and her mother in the parking lot. The woman, who had been looking at her phone, testified that she heard her mother scream. Before she could react, however, one of the men punched her in the face. She testified that another man also started to hit her, and shortly thereafter, she realized she had been shot in the arm. The mother called 911 after the men ran off.

¶ 5     Elsewhere in the parking lot, a man approached a woman sitting in a school bus and demanded that she help him escape in the bus. She refused and ran from the bus.

¶ 6     When the police arrived, they found a man hiding under a school bus, but were unable to locate the other two suspects. Police arrested the man found beneath the bus, whom they later identified as Miguel Sanders. After investigating the robbery, officers charged Sanders, Richardson, and Myloh Mason with more than thirty offenses. Richardson was arrested soon after, but Mason remained at large for two months. The search for Mason received significant media attention, and he was briefly placed on the Federal Bureau of Investigation's "Most Wanted" list.

¶ 7     The trials of Richardson, Mason, and Sanders were consolidated. After the prosecution added more charges, Richardson was charged with seventy offenses.

(ECF No. 15-3 at 2-4). Before trial, Applicant filed a motion to sever his trial from that of

Mason and Sanders arguing that the prosecution's evidence against his co-defendants

was unfairly prejudicial to Applicant because it would be inadmissible if Applicant were

tried alone. (*Id.* at 4). He also contended that his defense was antagonistic to that of his

2

co-defendants. (*Id.*). After a hearing, the trial court found that the three men's defenses were not antagonistic, denied Applicant's motion, and announced it would provide curative instructions if the evidence required them. (*Id.*). The consolidated trial took place, and on November 18, 2016, the jury convicted Applicant on thirty-three counts. (*Id.;* ECF No. 1 at 2). The Colorado Court of Appeals affirmed Applicant's judgment of conviction on March 5, 2020, and the Colorado Supreme Court denied certiorari on June 29, 2020. (ECF Nos. 15-3, 15-4).

Applicant initiated the instant action on April 16, 2020 and asserted three claims for relief. On October 16, 2020, the Court entered an order dismissing claims 2 and 3 as unexhausted and procedurally defaulted. (*See* ECF No. 19). Applicant's remaining claim is whether the trial court erred in denying Applicant's requests to sever his trial from that of his codefendants. (ECF No. 1 at 4-9, 13-19).

## II.    STANDARDS OF REVIEW

The Court must construe the Application filed by Mr. Richardson liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an

>unreasonable application of, clearly established Federal law, as
>determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable
>determination of the facts in light of the evidence presented in the State
>court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

>clearly established law consists of Supreme Court holdings in cases
>where the facts are at least closely-related or similar to the case *sub
>judice*. Although the legal rule at issue need not have had its genesis in
>the closely-related or similar factual context, the Supreme Court must
>have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, then the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-

05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (1991) (internal quotation marks and citation omitted). A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted).

Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citations omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

With respect to factual determinations, section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an

unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 978 (U.S. Feb. 20, 2018). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If the habeas applicant succeeds in demonstrating that the state court decision is contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented, then the Court must consider the merits of the constitutional claim *de novo. See Harmon v. Sharp*, 936 F.3d 1044, 1056-57 (10th Cir. 2019).

## III. MERITS OF APPLICANT'S CLAIM

In claim 1, Applicant contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the trial court erroneously denied his requests to sever his trial from that of his co-defendants.

### A.    State Court Proceedings

On direct appeal, Applicant argued that he was entitled to a separate trial as a matter of right under Colo. R. Crim. P. 14 and Colo. R. Stat. § 16-7-101 (2019) because there was material evidence admissible against his co-defendants but not admissible against him and was prejudicial to him. (ECF No.15-1 at 25-29). He further argued that even if severance was not mandatory, the trial court abused its discretion in refusing to sever the trials because his defense was antagonistic to the defense of co-defendant Sanders who admitted to participating in the charged offenses. (*Id.* at 29-31).

The Colorado Court of Appeals first held that severance was not mandatory under Colorado law as follows.

### B. Mandatory Severance

#### 1. The Law Governing Mandatory Severance

¶ 17    "Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)). A criminal defendant, however, "is entitled to severance as a matter of right if there is evidence which is admissible against one but not all of the parties and that evidence is prejudicial to the defendant against whom the evidence is not admissible." *People v. Lesney*, 855 P.2d 1364, 1366 (Colo. 1993); see § 16-7-101; Crim. P. 14.

¶ 18    Crim. P. 14 provides, in relevant part, that a trial court shall grant a defendant a separate trial "as of right" if it finds that "the prosecution probably will present against a joint defendant evidence, other than reputation or character testimony, which would not be admissible in a separate trial of the moving defendant, and that such evidence would be

prejudicial to those against whom it is not admissible." Crim. P. 14. Section 16-7-101 similarly states that

> [w]hen two or more defendants are jointly indicted or informed against for any offense and there is material evidence, not relating to reputation, which is admissible against one or some of them but which is not admissible against all of them if they are tried separately and which is prejudicial to those against whom it is not admissible, those against whom such evidence is admissible shall be tried separately . . . .

§ 16-7-101 (emphasis added). "The statute, unlike the rule, applies not just to evidence the prosecutor seeks to introduce, but also to evidence a codefendant seeks to introduce." *People v. Maass*, 981 P.2d 177, 183 (Colo. App. 1998).

¶ 19    The key question under the rule and the statute is "whether the admitted evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose." *Peltz*, 728 P.2d at 1277 (quoting *People v. Gonzales*, 198 Colo. 450, 454, 601 P.2d 1366, 1369 (1979)). "[A] defendant may demonstrate prejudice by showing, among other things, that 'consolidation caused actual prejudice and that the jury was not able to separate the facts and legal principles applicable to each case.'" *Buell v. People*, 2019 CO 27, ¶ 31, 439 P.3d 857, 862 (quoting *People v. Gross*, 39 P.3d 1279, 1282 (Colo. App. 2001)).

¶ 20    The trial court, however, has discretion to determine whether a curative instruction can mitigate any possible prejudice. *Gonzales*, 198 Colo. at 453, 601 P.2d at 1368-69; *see Peltz*, 728 P.2d at 1277. When the court properly instructs jurors to disregard erroneously admitted evidence, "there is a strong presumption that the jury followed the trial court's instructions." *Gonzales*, 198 Colo. at 454, 601 P.2d at 1369.

¶ 21    However, no curative instruction will suffice when the jury hears inadmissible evidence that "is so highly prejudicial . . . it is conceivable that but for its exposure, the jury may not have found the defendant guilty." *People v. Everett*, 250 P.3d 649, 663 (Colo. 2010) (quoting *People v. Goldsberry*, 181 Colo. 406, 410, 509 P.2d 801, 803 (1973)).

## 2. Application

¶ 22   Richardson argues that the trial court's denial of his severance motion resulted in actual prejudice to him because, during the consolidated trial, the jury heard evidence of (1) Mason's preparation for the robbery; (2) Sanders's attempt to hijack the school bus; and (3) Richardson's close relationship with both codefendants. Richardson also alleges that he was unfairly prejudiced by the pretrial publicity regarding Mason's appearance on the Federal Bureau of Investigation's "Most Wanted" list.

### a. Evidence of Mason's Preparation for the Robbery

¶ 23   The prosecution introduced evidence of Mason's preparation for the robbery, including his procurement of a vehicle, weapons, ammunition, and protective equipment. The trial court ruled that any unfair prejudice to Richardson resulting from the introduction of this evidence could be avoided by instructing the jury not to consider the evidence against Richardson. Richardson argues that, despite the trial court's cautionary instruction, he was nevertheless unfairly prejudiced by the admission of evidence of Mason's preparation. We disagree.

¶ 24   Two witnesses testified about Mason's preparation for the bank robbery. While evidence of preparation that did not implicate Richardson would likely have been inadmissible in a separate trial against Richardson, it was not unfairly prejudicial to him. Neither witness mentioned Richardson or suggested he was involved in preparing for the robbery. Thus, their testimony was not inconsistent with Richardson's theory of defense that he did not participate in the robbery.

¶ 25   Further, before each witness testified, the court instructed the jury "you must not consider this evidence against . . . Richardson." There is a strong presumption that the jury followed the instruction. *See Gonzales*, 198 Colo. at 454, 601 P.2d at 1369.

¶ 26   Because the witnesses did not mention Richardson and the court gave a strong cautionary instruction, we conclude that the trial court did not abuse its discretion in finding that the evidence of Mason's preparation for the robbery was not so prejudicial as to require severance of Richardson's trial from that of Mason.

### b. Evidence that Sanders Attempted to Hijack the School Bus

¶ 27    Sanders was separately charged with attempted aggravated robbery based on his efforts to hijack the school bus. Like the evidence of Mason's preparations, evidence of Sanders's attempted hijacking that did not implicate Richardson would likely have been irrelevant, and thus inadmissible, at a separate trial of Richardson.

¶ 28    Immediately following the testimony about Sanders's attempted hijacking, the trial court provided the following instruction: "The prosecution was just presented evidence from [a witness] against [Sanders] in the charge of criminal attempted aggravated robbery. You are instructed that you must not consider such evidence against the other two defendants."

¶ 29    As with the evidence of Mason's preparation for the robbery, we conclude that the trial court did not err in deciding that a limiting instruction would cure any unfair prejudice to Richardson resulting from the testimony regarding Sanders's attempted hijacking.

### c. Evidence of Richardson's Association with Mason and Sanders

¶ 30    Richardson argues that evidence of his association with Mason and Sanders, which he concedes might have been admissible against him in a separate trial, was unfairly prejudicial to him. He alleges that, because the prosecution introduced evidence that he was a friend of Sanders and that Mason was his cousin, the jury would "presume that even if the evidence against [him] at trial was thin, and susceptible to innocent explanation, if the other two were guilty, he must be as well." We disagree.

¶ 31    "[M]utual participation of defendants in an offense is considered a logical basis for refusing to sever." *People v. Vigil*, 678 P.2d 554, 557 (Colo. App. 1983). Moreover, divisions of this court "have consistently held, and we agree, that prejudice is generally not established when the evidence of each incident would have been admissible in separate trials." *Buell*, ¶ 31, 439 P.3d at 862. The purpose of severing a trial is to protect a defendant from undue prejudice that would arise only if he or she were tried with the codefendants. Because Richardson concedes that the prosecution could have introduced the same evidence of the codefendants' relationships if Richardson had been tried alone, we conclude that the trial court did not err in denying Richardson's motion for a separate trial.

d. The Pretrial Publicity

¶ 32   Richardson argues that the jury was prejudiced because approximately one-third of the jury pool had seen the pretrial publicity surrounding Mason and one potential juror mentioned that he had seen media coverage of the search for Mason. Richardson contends, therefore, that the trial court erred in denying his motion to sever. We disagree.

¶ 33   Crim. P. 14 and section 16-7-101 govern potential prejudice arising from evidence introduced at trial, not prejudice resulting from information jurors obtained before the trial. Here, the prosecution did not introduce evidence of the pretrial publicity. The only information the jurors heard in the courtroom about the pretrial publicity came from the prospective juror who mentioned that he had seen media accounts of the search for and arrest of Mason. And the trial court properly addressed any potential prejudice resulting from the prospective juror's statement by excusing him for cause.

¶ 34   Thus, we conclude that the trial court did not err in finding that the publicity about the manhunt for Mason and his arrest did not require severance of Richardson's trial from that of Mason.

(ECF No. 15-3 at 7-15).

The Colorado Court of Appeals further held that the trial court did not abuse its

discretion in denying Applicant's requests to sever his trial from that of his co-

defendants. The Colorado Court of Appeals analyzed this claim as follows:

C. Discretionary Severance

¶ 35   Richardson further asserts that the trial court abused its discretion in not severing his trial from that of Mason and Sanders because (1) his defense was antagonistic to those of his codefendants and (2) the complexity of the case prevented the jury from fairly evaluating the evidence against him alone. We disagree.

1. The Law Governing Discretionary Severance

¶ 36   When severance is not mandatory, "[a] trial court has the discretion

12

to order severance in other cases." *Lesney*, 855 P.2d at 1366. Crim. P. 14 provides, in pertinent part, "[i]f it appears that a defendant or the prosecution is prejudiced by a joinder of offenses . . . in any indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires." Crim. P. 14.

¶ 37   In exercising its discretion, a trial court should be guided by the following considerations: (1) whether the number of defendants or the complexity of the evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions, the evidence admissible against one defendant will be improperly considered against the other defendant(s); and (3) whether the defenses asserted by each defendant are antagonistic. *Lesney*, 855 P.2d at 1366.

### 2. Application

### a. The Allegedly Antagonistic Defenses

¶ 38   Richardson argues that his codefendants' defenses were antagonistic to his defense.

¶ 39   "Neither Crim. P. 14 nor [section] 16-7-101 refers to antagonistic defenses as a basis for severing trials. Rather, it is a judicially recognized consideration . . . ." *Maass*, 981 P.2d at 184. "[T]here is no universal agreement on the nature and amount of antagonism sufficient to require separate trials." *Id.* Defenses may be antagonistic if they require that "the acceptance of one defense would tend to preclude the acquittal of the other defendant. Conversely, such a showing would also seemingly require that the guilt of one defendant would tend to establish the innocence of the other." *Id.* (citing *United States v. McClure*, 734 F.2d 484 (10th Cir. 1984)).

¶ 40   Divisions of this courts have explained that defenses are not antagonistic where they do not specifically contradict one another. *See, e.g., Maass*, 981 P.2d at 185; *People v. Escano*, 843 P.2d 111, 115 (Colo. App. 1992); *People v. Wandel*, 713 P.2d 398, 400 (Colo. App. 1985). Likewise, in *Peltz*, the Colorado Supreme Court held that two codefendants' theories of defense were not "antagonistic within the true meaning of the term" because one codefendant "never accused [the other codefendant] of committing the crime." *Peltz*, 728 P.2d at 1278.

¶ 41   Sanders admitted to participating in the robbery but asserted a mental health defense. He argued that "he had a much smaller role" in the crime spree than the other participants in the bank robbery. In contrast, Richardson and Mason denied they were present at the robbery or involved in the subsequent assault and shooting.

¶ 42   The People argue that these defenses are not antagonistic because they are not mutually exclusive. We agree.

¶ 43   The jury was not required to find Mason and Sanders guilty in order to acquit Richardson. Thus, the defenses were not antagonistic and the trial court did not abuse its discretion in finding that severance of the trials was not warranted.

b. The Alleged Complexity of the Case

¶ 44   Richardson also argues that the trial court should have severed his trial because of the complexity of the case. He contends that the jury likely was unable to fairly evaluate the evidence against him and his codefendants because the prosecution included more than sixty counts against him, some of which were also brought against one or both of his codefendants. *See People v. Rosa*, 928 P.2d 1365, 1373 (Colo. App. 1996) (explaining that a trial court abuses its discretion if the "joinder caused actual prejudice to the defendant . . . and . . . the trier of fact was not able to separate the facts and legal principles applicable to each offense"). The prosecution contends that Richardson fails to establish that the evidence confused the jury. We agree with the prosecution.

¶ 45   Richardson provides no support for his position that the jurors were unable to separate the facts and legal principles applicable to each offense and therefore could not fairly evaluate the case against him. *See Garcia*, ¶ 30, 296 P.3d at 290. Nor do we find support for this position in the record. The jury returned a nuanced verdict. The jury convicted only Richardson of attempted first degree murder of the daughter who was in the school parking lot. Yet, he was also the only defendant acquitted of both attempted first degree murder and first degree assault of the homeowner whose minivan the men stole. Thus, we cannot conclude that the jury was unable to separate the factual and legal principles applicable to each codefendant. *See id.* (concluding that where a jury acquitted a codefendant on all charges related to two victims, but not on other related charges, "the jury was able

to separate the facts, legal principles, and defenses applicable to [the] charges").

¶ 46   For these reasons, we conclude that the trial court did not err in denying Richardson's motion for severance.

(ECF No. 15-3 at 15-19).

**B.    Controlling Law**

"Whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans,* 161 F.3d 610, 619 (10th Cir. 1998) (citations omitted).  Although questions of improper joinder are typically matters of state law and do not implicate the United States Constitution, misjoinder can amount to a federal constitutional violation if "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *U.S. v. Lane,* 474 U.S. 438, 446 (1986) (recognizing that in "egregious cases," a deprivation of constitutional due process can arise where joinder of co-defendants allows certain evidence to be admitted against one co-defendant where such evidence would be inadmissible in a separate trial against the other co-defendant); *see also Lathrop v. Dinwiddie,* 317 Fed. Appx. 842, 845 (10th Cir. 2009) (unpublished) ("whether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal," because "a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial").

15

> Separate trials are not a matter of right where two defendants allegedly participated in the same act or transaction giving rise to the criminal offense. The decision whether to grant or deny a motion to sever trials is within the trial court's discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. Denial of a motion to sever is not an abuse of discretion unless there is a serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.
>
> The district court may order severance if it appears that a defendant is prejudiced by a joinder of offenses or of defendants. Before exercising its discretion to grant a motion to sever, however, the trial court must weigh prejudice to the defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration. It is not enough for [the defendant] to show that severance would have enhanced his chances of acquittal. He must, rather, make a strong showing of prejudice. This burden is heavy for the defendant to bear as he must show more than a better chance of acquittal or a hypothesis of prejudice, he must, in fact, show real prejudice.

*United States v. Dirden,* 38 F.3d 1131, 1140-41 (10th Cir. 1994) (citations and internal quotation marks omitted).

To obtain habeas relief for failure to sever in the face of antagonistic defenses, a petitioner must show that the defenses urged by the parties

> were so antagonistic that they are mutually exclusive. Severance is not warranted, however, merely because defense theories conflict or because one defendant is attempting to cast blame on the other. Mutually antagonistic defenses are not prejudicial *per se.* The defenses truly must be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other.

*Campbell v. Ward,* 315 Fed. Appx. 82, 85 (10th Cir. 2009) (unpublished). *See also Fox v. Ward,* 200 F.3d 1286, 1293 (10th Cir. 2008) ("Such actual prejudice is shown if the defenses are truly mutually exclusive, such that a jury could not believe the core of one

16

defense without discounting entirely the core of the other.").

### C.    *Application*

To the extent Applicant's mandatory severance claim was raised and rejected in the state appellate courts as a violation of Colo. Rev. Stat. § 16-7-101 or Colo. R. Crim. P. 14, Applicant is not entitled to federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'federal habeas corpus relief does not lie for errors of state law.'").

To the extent Applicant's claim was interpreted as a federal constitutional claim by the Colorado Court of Appeals, Applicant has not demonstrated he is entitled to habeas relief in this action. Similar to his arguments in state court, Applicant contends that the trial court's denial of his severance motion violated his right to a fair trial and resulted in the jury hearing highly prejudicial evidence involving his co-defendants that otherwise would not have been admissible if Applicant had been tried separately. He specifically asserts that the following evidence admitted during the consolidated trial resulted in actual prejudice to Applicant: (1) co-defendant Mason's preparation for the robbery, including procuring weapons, protective gear, ammunition, and a vehicle; (2) co-defendant Mason's pretrial publicity on the FBI's "Most Wanted" list; (3) co-defendant Sanders' attempt to hijack a school bus; and (4) Applicant's close relationship with Mason and Sanders prior to the robbery. (*See* ECF No. 1 at 15-19).

For substantially the same reasons outlined by the Colorado Court of Appeals, this Court concludes that Applicant fails to demonstrate he suffered actual prejudice as

a result of the trial court's failure to sever his trial from that of his co-defendants. Here,
the crux of Applicant's complaint is that there was no direct evidence of his
participation in the robbery, and that the "substantially more conclusive evidence
linking [his co-defendants] to the robberies created an unacceptable danger of
spillover" and resulted in the jury finding him "guilty due to being jointly tied with the
Team." (ECF No. 1 at 19). As the Colorado Court of Appeals found—in factual findings
which are treated as presumptively true and are unrebutted by Applicant—the evidence
at trial established that no witnesses mentioned Applicant or suggested he was
involved in Mason's preparation for the robbery or Sanders' attempted hijacking.
Moreover, when this evidence was entered against Mason or Sanders, the trial court
provided strong cautionary instructions regarding each piece of evidence, thereby
informing the jury that such testimony should not be considered against Applicant. (*See*
State Court R., 11/7/16 Trial Tr. at 129; 11/9/16 Trial Tr. at 24, 35; Court File at 459,
Jury Instruction No. 51) ("The prosecution was just presented evidence from [a
witness] against [Sanders] in the charge of criminal attempted aggravated robbery. You
are instructed that you must not consider such evidence against the other two
defendants" and "you are instructed that you must not consider such evidence against
Codefendant Tyrone Richardson"). Further, the state appellate found that the
prospective juror who was exposed to pretrial publicity regarding the search for and
arrest of Mason was excused for cause by the trial court. (*See* State Court R., 10/26/16
Trial Tr. at 215-223). Finally, the Colorado Court of Appeals determined that

18

Applicant's association with Mason and Sanders would have been equally admissible against Applicant had he been tried alone. (ECF No. 15-3 at 13; *see also* State Court R., 11/8/16 Trial Tr. at 100-103). As such, the challenged evidence did not cause actual prejudice to Applicant, and the jury was not prevented from making a reliable judgment of guilt or innocence. *See e.g., Lane,* 474 U.S. at 446 (holding that misjoinder does not constitute constitutional error without showing of actual prejudice).

The Court further agrees that Applicant has not submitted evidence demonstrating that his defense was antagonistic to his co-defendants' defenses. Applicant specifically claims that Sanders' defense was mutually antagonistic to his defense, but he fails to demonstrate any antagonism or conflict. The Colorado Court of Appeals correctly applied the law regarding antagonistic defenses to Applicant's claim. In doing so, the state appellate court correctly concluded that Applicant's defense strategy (denying he was present at the robbery or involved in the subsequent assault and shooting) is not mutually exclusive with Sanders' defense strategy (admitting that he participated in the robbery but asserting a mental health defense and arguing that his co-defendants were the leaders of the conspiracy). (*See generally* State Court R., 11/16/19 Trial Tr. at 114-127, 144-161). It is entirely possible for the jury to believe both defenses at the same time; for example, the jury was not required to find co-defendants Mason and Sanders guilty in order to acquit Applicant. Applicant's remaining argument on this point—*e.g.* that joinder of the co-defendants prevented Applicant from defending himself because Sanders claimed that all three men were

19

involved —does not give rise to an entitlement to severance. *See e.g., Dirden,* 38 F.3d at 1141 ("severance is not warranted ... because one defendant is attempting to cast blame on the other"); *Fox,* 200 F.3d at 1293 (finding no actual prejudice where each defendant admitted to involvement in the felony, but tried to exculpate himself by inculpating the other in the actual commission of the murder); *United States v. Iiland,* 254 F.3d 1264, 1270 (10th Cir. 2001) (citations omitted) (explaining that the requisite showing of prejudice "is not made by a complaint that one defendant is less culpable than another, or by an allegation that a defendant would have a better chance of acquittal in a separate trial, or by a complaint of the 'spill-over' effect of damaging evidence presented against a codefendant."). Thus, the Colorado Court of Appeals correctly applied federal law to the facts of this case, and Applicant is not entitled to relief on the grounds of improper joinder due to antagonistic defenses.

In the Court's view, reasonable jurists could not debate the Colorado Court of Appeals' conclusion that Applicant did not suffer actual prejudice from the trial court's failure to sever Applicant's trial from that of his co-defendants Mason and Sanders. As such, Applicant is not entitled to habeas relief.

## IV.    CONCLUSION

For the reasons discussed in this order, Mr. Richardson is not entitled to relief on his remaining claim. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice. It is

further

ORDERED that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c). It is further

ORDERED that pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any

appeal from this order would not be taken in good faith and therefore *in forma pauperis*

status is DENIED for the purpose of appeal. *See Coppedge v. United States*, 369 U.S.

438 (1962). If Applicant files a notice of appeal he also must pay the full $505 appellate

filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED January 5, 2021.

BY THE COURT:

R. BROOKE JACKSON
United States District Judge